UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ESSENTIA INSURANCE COMPANY,

        Plaintiff,                         Case No. 18-cv-10345

v.                                            Honorable Thomas L. Ludington

GEORGE M CLARK, JR.,

        Defendant.
_____/

**OPINION AND ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO INTERVENE**

On January 30, 2018, Plaintiff Essentia Insurance Company ("Essentia") filed a complaint seeking declaratory judgment and naming George Clark ("Clark") as the Defendant. ECF No. 1. On March 2, 2018, Clark filed a motion to dismiss wherein he argues that the Court should abstain from exercising jurisdiction over this action for declaratory relief. ECF No. 7. In the motion, Clark explains that a state court action is pending which will resolve the questions raised by Essentia's present action. A week later, the Titan Indemnity Company ("Titan") filed a motion to intervene as a plaintiff. ECF No. 8. For the following reasons, the motion to dismiss will be granted and the motion to intervene will be denied.

**I.**

**A.**

At the pleading stage, all well-pleaded factual allegations are assumed to be true. Essentia "is a Missouri insurance company with its principal place of business in Virginia." Compl. at 1, ECF No. 1. Clark is a resident of Saginaw, Michigan. *Id.* at 2.

On June 7, 2016, Essentia issued a "classic automobile policy . . . with effective coverage . . . to June 7, 2017 . . . to Clarence Farver for a 1989 Mercedes-Benz 300E." *Id.* As required by Michigan law, the policy "provided no-fault personal protection insurance ["PIP benefits"]." *Id.* Mr. Farver died on January 3, 2017, leaving behind a will which is currently being probated in the Saginaw County Probate Court. *Id.* at 3. The will allegedly names Katherine Stone as the personal representative of the estate and directs that all of Mr. Farver's tangible personal property, including his motor vehicles, be delivered to Ms. Stone in her individual capacity. *Id.*

Despite the provisions of the will, Clark was operating the 1989 Mercedes-Benz on March 28, 2017, when he was severely injured in a single-vehicle accident. *Id.* Clark subsequently made a claim for personal protection insurance benefits from Essentia, relying upon the policy issued to the late Mr. Farver. *Id.* "During the course of Essentia's investigation, Clark and his wife . . . provided statements in which they alleged that Farver gave them the vehicle before he died." *Id.* at 3–4. The Clarks have provided "a purported signed title from Farver," but Essentia alleges that the "purported signature of Farver on the title is not Farver's signature." *Id.* at 4. And Essentia further alleges that Clark's attorney has admitted that the "title to the vehicle was never legally transferred to Clark after Farver's death." *Id.* Clark maintains that he "reasonably believed he could use the Vehicle after Farver's death." *Id.* Essentia disagrees.

Essentia's complaint advances one count seeking a declaratory judgment that Clark unlawfully took the vehicle in question such that Clark is not entitled to personal insurance protection benefits under M.C.L. § 500.3113(a).

**B.**

On February 6, 2018 (one week after Essentia filed its complaint seeking declaratory judgment), Clark filed a state court action against Progressive Michigan Insurance Company, Titan Indemnity Company, and Essentia Insurance Company. State Court Compl., ECF No. 7, Ex. 1.

In the state court complaint, Clark alleges that, sometime before Clark was injured in the accident, state court Defendant Progressive "executed and delivered to Plaintiff's spouse, Marianne Maurer Clark, . . . a certain automobile policy . . . that included a Michigan Personal Injury Protection Endorsement." *Id.* at 2. The policy issued to Ms. Clark did not identify her husband as a named insured or driver. *Id.* at 3.

The state court complaint also explains that, at the time of Clark's accident, he was driving a Mercedes-Benz vehicle titled in the name of and registered to Clarence Farver. *Id.* The Mercedes was insured by state court Defendant Essentia. Similarly, the state court complaint alleges that "[a]t some point before Clarence Farver's death, Defendant Titan Indemnity Company executed and delivered to Farver . . . a certain automobile Policy . . . insuring a second motor vehicle owned by Farver." *Id.* at 4. The Titan Policy "provided security for payment of No Fault PIP benefits as *an insurer* of Clarence Farver, the 'owner or registrant of [the vehicle involved in Clark's accident]." *Id.* (emphasis in original) Clark alleges that his use of the Mercedes was "permissive, based on *antemortem* representations of Farver." *Id.*

Clark asserts, first, that "Defendant Progressive is obligated to provide statutorily mandated coverage for PIP benefits to and on behalf of Plaintiff." *Id.* at 5. He alternatively believes that "Defendants Titan and Essentia stand in the same level of priority" regarding his claim for PIP benefits, and that they "are obligated to provide statutorily mandated coverage for PIP benefits." *Id.* at 4–5.

**II.**

In his motion to dismiss, Clark argues that the Court should abstain from exercising jurisdiction over this suit because the dispositive issue raised by Essentia will be resolved in a currently pending state court suit. The general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McClellan v. Carland*, 217 U.S. 268, 282 (1910). *See also RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 557 (6th Cir. 2013) ("The Supreme Court has repeatedly held . . . that the mere pendency of a state-court case concerning the same subject matter as a federal case is not reason enough to abstain."). But, in limited circumstances, abstention is warranted. Although federal courts generally have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), "[e]xercise of jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) is not mandatory." *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004). *See also Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942) ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.").

And the Sixth Circuit has cautioned that, in "insurance coverage diversity cases, . . . 'declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court.'" *Bituminous Cas. Corp.* at 812 (quoting *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir.1986)). "Such actions for an advance determination in the nature of an advisory opinion should normally

be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem. Otherwise confusing problems of scheduling, orderly presentation of fact issues and *res judicata* are created." *Manley*, 791 F.2d at 463.

The Sixth Circuit has identified five factors with relevance to question of whether a district court should exercise jurisdiction over a suit for declaratory judgment:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008).

In this matter, these factors counsel against the exercise of jurisdiction.

**III.**

**A.**

The first factor to consider is whether resolution of the claim for declaratory judgment would settle the controversy. There are two lines of Sixth Circuit precedent which have characterized and analyzed this factor in seemingly inconsistent ways. *See Flowers*, 513 F.3d at 555 (collecting sources and identifying the inconsistencies). "One set of cases has concluded that a declaratory relief action can settle the insurance coverage controversy *not being addressed* in state court, even though it will not help resolve the underlying state court action." *Id.* (emphasis added) (citing *West Am. Ins. Co. v. Prewitt*, 208 Fed. App'x. 393, 396 (6th Cir. 2006); *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003); *Allstate Ins. Co. v. Green*,

825 F.2d 1061, 1066 (6th Cir. 1987); *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n. 1 (6th Cir. 1986)). The second group of cases has concluded that, "while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court," and thus jurisdiction should not be exercised. *Id.* (citing *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 272 (6th Cir. 2007); *U.S. Fire Ins. Co. v. Abex Aluminum, Inc.*, 161 Fed. App'x. 562, 565 (6th Cir.2006); *Bituminous*, 373 F.3d at 814; *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir.1991); *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 251 (6th Cir. 1986) (Merrit, J., dissenting); *Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)).

In *Flowers*, the Sixth Circuit characterized the origin of these competing lines of cases as "rest[ing] on the competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible." *Id.* But the *Flowers* Court also identified several relevant characteristics of the two lines of cases which helped reconcile the different approaches. First, when the claim for declaratory judgment (usually centering on an insurance coverage question) involves "legal, not factual, dispute[s]," courts are more likely to find that the declaratory judgment will resolve the dispute. *Id.* at 556. Second, if the suit for declaratory judgment involves a party who is not joined in the state court action, then the matter cannot be settled in state court, and the exercise of jurisdiction is appropriate. *Id.*

In this case, both considerations suggest that the present suit for declaratory judgment will not resolve any issue which is not currently (or will inevitably be) before the state court. First, the issue posed by the present suit is a "fact-based question of state law" *Flowers*, 513 F.3d at 555. Essentia seeks a declaration that "Clark unlawfully took the vehicle from Farver's estate." Compl.

at 5. Michigan law provides that "[a] person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if . . . (a) [t]he person was willingly operating or willingly using a motor vehicle or motorcycle that was taken unlawfully, and the person knew or should have known that the motor vehicle or motorcycle was taken unlawfully." M.C.L. 500.3113 & (a).

Essentia argues that the existence of the will which allegedly left the vehicle in question to Katherine Stone necessarily establishes that Clark was using a vehicle that had been taken unlawfully. Of course, the authenticity and enforceability of the will is undetermined at this point. *See* Compl. at 3 (explaining that the will has been filed with the Saginaw County Probate Court). And even assuming that the will is valid and enforceable, Essentia may refuse benefits pursuant to 500.3113(a) only if Clark "knew or should have known" that the vehicle was not his. And Essentia's complaint alleges that Clark has proffered a "purported signed title from Farver." Compl. at 4. Essentia disputes the authenticity of the signature on the title. If authentic, then Clark could reasonably have relied on that title as authorizing him to use the car (especially if Clark was unaware of Faver's will). And even if the signature is not authentic, Essentia would have to demonstrate that Clark was aware it was falsified. These are quintessential issues of fact. *See Rambin v. Allstate Ins. Co.*, 495 Mich. 316, 336 (2014) (affirming conclusion that there was an issue of fact regarding whether the plaintiff "took the motorcycle believing he had authority to do so").

And, contrary to Essentia's arguments, these issues of fact are or will be squarely presented to the state court. Clark has sued Progressive, Essentia, and Titan in the state court action. The arguments which Essentia now makes will inevitably be raised in that proceeding as affirmative defenses. Essentia argues that the state court is not "likely to consider these issues [because] summary disposition should be granted for Essentia under M.C.R. 2.116(C)(6)." Pl. Resp. Br. at

8. But M.C.R. 2.116(C)(6) merely authorizes a party to seek dismissal of an action on that ground that "[a]nother action has been initiated between the same parties involving the same claim." Thus, Essentia's argument presumes that this Court will exercise jurisdiction, and relies upon that presumption as a reason for the Court to do so. The state court will not resolve these issues if it dismisses the case, but if this Court declines jurisdiction, then the basis for the motion pursuant to M.C.R. 2.116(C)(6) collapses.

In other words, the present suit for declaratory judgment involves extremely fact-bound questions of state law which have also been raised in a state court suit involving the same parties. And the state court action includes as Defendants all three insurance companies against which Clark is seeking benefits. Thus, any declaratory judgment by the Court in this action will merely complicate the state court action. Rendering declaratory judgment would either create the risk of inconsistent judgments or raise unnecessary issues of *res judicata*. And, in either scenario, the state court would be required to resolve the claims by Clark against Progressive and Titan. In short, the present action for declaratory judgment will not end the state court controversy and, to the extent Essentia remains a Defendant in state court, would not even entirely resolve the litigation between Clark and Essentia. Under both lines of Sixth Circuit authority, then, the exercise of jurisdiction would do little to clarify the controversy. Because the factual issues raised by the present suit are also implicated in the state suit, there is no discrete controversy which can be addressed now without complicating the state court suit. *See Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991) ("There is no claim that state remedies for resolution of the coverage issues are either unavailable or ineffective. Rather than settling the issues presented in the litigation, dual decisions are likely to simply confuse matters."). The first factor weighs against the exercise of jurisdiction.

**B.**

The next factor is whether declaratory judgment would clarify the legal relations at issue. "The second factor in the . . . analysis is closely related to the first factor and is often considered in connection with it." *Flowers*, 513 F.3d at 557. Once again, "a split has developed in [Sixth Circuit] precedent concerning whether the district court's decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Id.* In *Flowers*, the Sixth Circuit found most persuasive the line of precedent which focused on whether the declaratory judgment would clarify only the legal issues presented in the declaratory judgment action. *Id.* (citing *W. Am. Ins. Co. v. Prewitt*, 208 Fed. App'x 393, 397 (6th Cir. 2006); *Northland Ins. Co. v. Stewart Title Guar. Co.,* 327 F.3d 448, 454 (6th Cir. 2003); *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n.1 (6th Cir. 1986)).

The line of cases which the *Flowers* Court identified as most persuasive repeatedly emphasize that the second factor weighs in favor of exercising jurisdiction when the declaratory action would clarify legal relationships between the parties in the federal action which would otherwise not be clarified in the state action. *See Prewitt*, 208 Fed. App'x at 397 ("This Court has held that declaratory relief was a proper remedy in cases where the declaratory action would clarify *only* the legal relationship between the insured and the insurer, and would not clarify the legal relationships in the state action.") (emphasis in original); *Northland*, 327 F.3d at 453–54 (explaining that "while the declaratory judgment would not end the dispute between" the state court plaintiff and the state court defendant, "it would settle the controversy regarding the scope of insurance coverage issued by Northland to [state court plaintiff], and whether Northland had a duty to defend the insureds," especially because "Northland was not a party in the state court

proceedings"). Similarly, in *Flowers*, the Sixth Circuit concluded that the second factor favored the exercise of jurisdiction because the district court's "order resolved all the issues regarding the legal relationships of the parties to the declaratory action," and although the order "did not clarify all of the legal relationships at issue in the state court action, the district court's decision did not create any confusion about the resolution of those issues." *Flowers*, 513 F.3d at 557.

This focus on whether the declaratory action would clarify legal relations which would otherwise not be clarified in an ongoing state court suit is buttressed by the underlying purpose of declaratory actions. Typically, declaratory actions are reserved for situations where "some additional harm, not merely waiting for the natural plaintiff to sue, will befall the declaratory plaintiff in the meantime." *AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004). In the tort context, "when a putative tortfeasor sues an injured party for a declaration of nonliability, courts will decline to hear the action in favor of a subsequently-filed coercive action by the 'natural plaintiff.'" *Id.* That tendency stems from the fact that the "'useful purpose' served by the declaratory judgment action is the clarification of legal duties for the future, rather than the past harm a coercive tort action is aimed at redressing." *Id.* In other words, a declaratory judgment is useful when "a declaratory plaintiff will suffer injury unless legal relations are clarified" (and thus "act at their peril"), but is not useful when the declaratory plaintiff merely seeks "an ultimate determination of liability on an already-accrued damages claim." *Id.*

Although *Dale* noted these considerations in the tort context, they also apply in "insurance coverage diversity cases." *See Bituminous*, 373 F.3d at 812 ("We have repeatedly held in insurance coverage diversity cases that 'declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court.'") (quoting *Manley*, 791 F.2d at 463). *See also Odom*, 799 F.2d at 251 ("[D]eclaratory judgment actions

seeking an advance opinion on indemnity issues are rarely helpful when there is an ongoing action in another court. Except in unusual circumstances, such actions for an advance determination in the nature of an advisory opinion should be filed, if at all, in the court having jurisdiction over the underlying litigation."). *See also Quicken Loans Inc. v. United States*, 152 F. Supp. 3d 938, 953 (E.D. Mich. 2015) (citing *Dale* in a suit seeking declaratory judgment that no breach of contract occurred because an ongoing "coercive action" by the natural plaintiff raised the same fundamental issue of liability).

Essentia argues simply that the declaratory judgment action will "inevitably clarify the legal relations between Essentia and Clark and the scope of insurance coverage available to Clark pursuant to the Essentia policy." Pl. Resp. Br. at 9. But that issue is identical to, or at least subsumed by, the ultimate issue of liability raised by Clark's state court suit. Here, Essentia has not identified any legal relationships in the declaratory action which will not also be addressed in the state court action. And as explained above, the declaratory action may in fact increase the complexity of the state court action. This fact distinguishes the present case from *Flowers*, 513 F.3d at 557 ("While it did not clarify all of the legal relationships at issue in the state court action, the district court's decision did not create any confusion about the resolution of those issues."). When a coercive action by the natural plaintiff has been filed, exercising jurisdiction over a declaratory judgment raising the same question of liability will provide no additional clarification, and will create "confusing problems of scheduling, orderly presentation of fact issues and *res judicata*." *Bituminous*, 373 F.3d at 812 (internal citations omitted). The second factor weighs against the exercise of jurisdiction.

**C.**

The third factor to consider is whether Essentia filed this suit in order to engage in "procedural fencing" or as part of a "race for *res judicata*." Courts disfavor "declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum." *Dale*, 386 F.3d at 788. Such actions discourage settlement negotiations and provide "no real value . . . except to guarantee to the declaratory plaintiff her choice of forum—a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act." *Id.*

In considering this factor, "[t]he question is not which party has chosen the better forum, but whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first." *Id.* at 789. The Sixth Circuit has cautioned district courts against "imput[ing] an improper motive to a plaintiff where there is no evidence of such in the record." *Flowers*, 513 F.3d 558. And, "when the plaintiff has filed his claim after the state court litigation has begun, [the Sixth Circuit has] generally given the plaintiff 'the benefit of the doubt that no improper motive fueled the filing of [the] action.'" *Id.* (quoting *Bituminous*, 373 F.3d at 814). In *Flowers*, this factor did not weigh against the exercise of jurisdiction because the declaratory plaintiff filed the action "several years after the state court proceedings began." *Id.* In *Dale*, on the other hand, this factor weighed heavily against the exercise of jurisdiction because the declaratory plaintiff received a settlement demand, indicated that it was considering the demand, and then filed suit one day later. *Dale*, 386 F.3d at 790. The Sixth Circuit concluded that it was clear "that the Banks filed declaratory actions not to resolve issues of liability that were hindering their normal behavior, but instead to gain procedural advantage." *Id.*

The present case is closer to *Dale* than *Flowers*. Declaratory plaintiffs are entitled to the benefit of the doubt when they file after the natural plaintiff has filed (especially if significant time

has passed since the natural plaintiff's filing). Here, Essentia filed six days *before* Clark filed. And, as Clark notes, Essentia's filing came one and one-half months after Essentia received a letter from Clark articulating the factual basis for his claim and approximately two months before the one-year statute of limitations on Clark's no-fault benefits claim would run. *See* Dec. 5, 2017, Letter, ECF No. 5, Ex. D; M.C.L. 500.3145. Given the ongoing discussions between the parties and the looming deadline to file, Essentia had good reason to believe that Clark's filing of suit was imminent. Essentia argues that it filed suit to obtain "a swift declaration resolving its potential obligation to pay the claim," but has provided no explanation for why that "swift declaration" could not come in the imminent suit by the natural plaintiff. Pl. Resp. Br. at 10. If Essentia is entitled to summary relief under state law regarding the extent of Clark's entitlement to coverage, that relief can be granted as promptly by a state court as well as a federal court. The third factor counsels against the exercise of jurisdiction.

**D.**

The fourth factor involves a consideration of whether the exercise of jurisdiction "would increase friction between federal and state courts." *Flowers*, 513 F.3d at 559. This factor originates from the Supreme Court's admonition that, "at least where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference.'" *Wilton*, 515 U.S. at 283 (quoting *Brillhart*, 316 U.S. at 495). Of course, "the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state court jurisdiction." *Green*, 825 F.2d at 1067. The Sixth Circuit has identified three sub-factors which district courts should consider in determining whether exercising jurisdiction would result in gratuitous interference with state courts:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Flowers*, 513 F.3d at 560 (quoting *Bituminous*, 373 F.3d at 814).

The first sub-factor requires an inquiry into whether "resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court." *Id.* If so, "the exercise of jurisdiction would be inappropriate." *Id.* As explained while analyzing the first factor, Essentia's suit for declaratory judgment involves a number of factual issues arising out of state law and which the state court will be required to adjudicate. The second sub-factor becomes relevant when the suit involves "novel questions of state law." *Id.* There is no reason to believe any such novel questions will arise here. *But see Travelers*, 495 F.3d at 273 ("We have often observed that '[s]tates regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation.'") (quoting *Bituminous*, 373 F.3d at 815 (internal citations omitted)). The third sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Id.* at 561. Although "not all issues of insurance contract interpretation implicate such fundamental state policies that federal courts are unfit to consider them," *id.*, when federal law will not govern any aspect of the suit, a state court forum is often "preferable." *See Travelers*, 495 F.3d at 273 ("This is not a case where federal law will come into play, and, therefore, a state court forum is preferable."). In this matter, all claims in both the federal and state suits are governed by state law.

Although it is questionable whether interpretation of the "unlawful taking" statute represents a "fundamental state" policy, there are simply no federal issues implicated by Essentia's suit.

In short, the first sub-factor weighs heavily against the exercise of jurisdiction, the second sub-factor does not provide guidance, and the third sub-factor suggests (albeit not strongly) that exercise of jurisdiction would constitute unwarranted interference with state court prerogatives. On balance, consideration of the policies and principles which undergird the fourth factor suggest that the Court should not exercise jurisdiction over the declaratory suit.

**E.**

The final factor to consider is the availability and efficacy of alternative remedies. "Courts deny declaratory relief if an alternative remedy is better or more effective." *Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). There are several reasons to believe that the pending state court action is a preferable forum for resolving the issues presented by Essentia's suit. The state court action includes as Defendants all insurance companies which could potentially be liable for Clark's PIP benefits claim. Thus, the state court is in a position to offer a universal resolution to the dispute arising out of Clark's claim for benefits, including, if necessary, findings regarding the priority of the various insurance coverages. This Court cannot do the same, even if it were to allow Titan to intervene. Relatedly, the state court's ability to universally address this dispute will help avoid delays associated with scheduling and *res judicata* disputes which would likely arise if this Court opted to exercise jurisdiction. Finally, this suit presents issues of state law which states courts are, by definition, particularly well-versed in.

And there is no obvious reason why the present declaratory action would provide a superior remedy.[1] Essentia argues that, if required to litigate the state court case, it will be prejudiced:

---

[1] As an example of a situation where a separate declaratory action offers a superior remedy, consider the following (common) scenario. When an insured individual is sued by an injured party (seeking, for example, compensation for

"Essentia should be allowed to proceed in this litigation to 'determine its legal obligations as quickly as possible' rather than be forced to litigate the state court case, which involves no-fault PIP claims against three defendants and will inevitably drag on for a longer period of time." Pl. Resp. Br. at 6 (internal citations omitted). But this unsupported assertion is questionable. Essentia argues repeatedly in its briefing that its defense to Clark's claim for benefits involves a straightforward application of Michigan law. If true, then Essentia will obtain dismissal in the state court. To the extent the factual issues implicit in the claim will necessitate significant discovery, that discovery would also be required in the federal action. There is no reason to believe that Essentia will not receive expeditious consideration of its arguments in state court. The fifth factor likewise weighs against the exercise of jurisdiction.

## IV.

In short, each of the five factors counsel against the exercise of jurisdiction to varying degrees. The present suit involves claims which are entirely subsumed in pending claims before state court. Given that fact, the present declaratory judgment action is entirely superfluous. While that fact alone is insufficient to *require* the Court to deny jurisdiction, Essentia has failed to identify compelling reasons why it would be prejudiced by a refusal. Indeed, as explained in *Dale*, declaratory judgment actions are generally meant to offer redress when the natural plaintiff has

---

injuries allegedly caused by the insured individual), a liability insurer will often appoint defense counsel to represent the insured individual even when the underlying question of coverage is unclear. That prudent decision, however, can create complications if the state court declines to address the issue of coverage first. If the insurer is required to defend the underlying tort action before a final determination on its duty to defend its insured occurs, the insurer may be unable to recover the costs of defense. In that scenario, a separate declaratory action seeking a determination regarding its duty to defend and/or indemnity is both appropriate and helpful.

In this matter, Clark was insured in a single-vehicle crash and is directly suing several insurance companies in state court. To the Court's knowledge, no third-party has sued Clark for injuries arising out of the accident, and so no issue regarding duty to defend has arisen. Thus, Essentia will not be prejudiced by litigating the state court action instead of the declaratory action because the legal issues raised in both are coterminous and Essentia will not incur additional litigation expenses by resolving the coverage question in state court.

delayed in bringing suit and the natural defendants "will suffer injury unless legal relations are not clarified." 386 F.3d at 786. Neither of those circumstances exist here. In short, Essentia has not identified any clear benefits in efficiency or equity offered by the declaratory judgment action, and exercising jurisdiction over the action would likely create "confusing problems of scheduling, orderly presentation of fact issues and *res judicata.*" *Bituminous*, 373 F.3d at 812. The Court declines to exercise jurisdiction.

Because the suit will be dismissed pursuant to the Court's discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201, and *Brillhart* abstention doctrine, Clark's argument that the Court should abstain from exercising jurisdiction under the *Colorado River* doctrine need not be addressed. For the same reason, Titan's motion to intervene will be denied as moot.

**V.**

Accordingly, it is **ORDERED** that Defendant Clark's motion to dismiss, ECF No. 7, is **GRANTED.**

It is further **ORDERED** that Intervening Plaintiff Titan's motion to intervene, ECF No. 8, is **DENIED as moot.**

It is further **ORDERED** that the complaint, ECF No. 1. is **DISMISSED.**

Dated: May 14, 2018
s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 14, 2018.

s/Kelly Winslow
KELLY WINSLOW, Case Manager